JUAN PEDROSA, Petitioner, *v.* DISTRICT COURT OF SAN JUAN, C. LLAUGER DÍAZ, JUDGE, Respondent.

No. 1175. Argued June 12, 1939.—Decided December 19, 1939.

*Dubón & Ochoteco* for petitioner. *Leopoldo Feliú, Celestino Iriarte* and *F. Fernández Cuyar* for the intervenor in the principal action.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This is a petition for certiorari involving the interpretation and application of the law to secure the effectiveness of judgments approved March 1, 1902. Code of Civil Procedure (1933 ed.), p. 96.

The Las Monjas Racing Corporation, a corporation organized according to the law of the Island, filed suit in the District Court of San Juan against various persons claiming $65,000 as damages, and prayed the court to secure the effectiveness of any judgment it might render in the following terms:

"1. That it has filed a complaint in the clerk's office of this District Court for the collection of money, wherein it claims the amount of $65,000 as damages suffered by plaintiff as a result of several injunctions issued at the request of defendants, who it turned out had no right to such orders.

"2. That as the case involves the payment of a liquidated debt to plaintiff, said plaintiff desires to secure the judgment of this court in case it is victorious by an order of this court according to the Act to secure the effectiveness of judgments of March 1, 1902, which authorizes the attachment of goods of the defendant.

"3. The complainant wishes an attachment up to the sum of $5,000 on sufficient goods of defendants to secure up to that amount of the $65,000 claimed and to that effect it offers to give bond in the amount this court may fix to order the said attachment."

The security was decreed as follows:

"In view of the previous motion and after examining its allegations and the Act of March 1, 1902, to secure the effectiveness of judgments, the court grants said motion on the condition that the plaintiff file a bond for $5,000 and after said bond is approved by this court, the clerk is ordered to issue the necessary writ to the marshal so that he attach as he is hereby ordered to attach sufficient goods of the defendants Fausto Arandes, Francisco Grovas, Deogracias Viera, Jorge Romany or Juan Pedrosa to secure the sum of $5,000."

After the plaintiff filed the required bond, the marshal attached property of one of the defendants, Pedrosa, consisting of race horses valued at $5,000, and by virtue of another bond given by Pedrosa, the property was given to him in deposit. Later the attachment was enlarged for $400 more under a bond for the same amount.

Under this state of affairs the defendant Pedrosa asked the court to lift the attachment in accordance with Section 15 of the act to secure the effectiveness of judgments conditioned on the filing of a bond for the value of the property attached. The plaintiff opposed this request and after long and repeated discussions and incidents including another

writ of certiorari, the district judge entered an order, the pertinent part of which says:

"The attached horses were delivered to petitioner, Pedrosa, upon the filing of a $5,0000–bond. This bond is in force. The truth is that this bond is for the same amount as that given by the pla¨ntiff to secure the effectiveness of the judgment. The attachment prayed for covered only the amount of $5,000. There is no doubt whatsoever that the court had this petition in mind when it fixed the bond. In any case, the parties discuss extensively the scope of Section 15 of the Act to secure the effectivenes of judgments and cite abundant jurisprudence, but I have found no case such as the present wherein a bond is given for a sum less than that claimed. It ¨s around this point that the parties argue extensively in their memoranda: but in my opinion the Supreme Court of Puerto Rico, through its Associate Justice Mr. Hutchison, has already decided the question when affirming a decision of January 17, 1939, wherein Judge Torres Pérez says: 'the plaintiff is bound to furnish bond in the amount claimed, that is, $30,000,' it states: 'the error, if any, on the order of January 17 to the effect that Pedrosa could not effect a dissolution of the attachment by the filing of a bond for $5,000, but in order to accomplish that result would be requ¨red to furnish a bond for $30,000 plus a reasonable amount to secure costs, disbursements and attorney's fees—was no prejudicial to petitioner.'

"That order whether right or wrong, was substantially in accord with petitioner's own theory as to the purpose and meaning of Section 15.

"I agree with the petitioner, Mr. Pedrosa, that this interpretation is somewhat hard on the defendant, but I cannot criticize the law, since the mission of the judge ¨s to interpret same as it stands, and as it has been interpreted, or at least as may be deduced from the interpretation of the opinion of the Supreme Court to which I have referred. We understand that the petition of the defendant, Mr. Pedrosa, has already been decided by this court, and the Supreme Court has passed on such decision and we should therefore not disturb this state of facts and law."

It was then that Mr. Pedrosa filed this petition for certiorari which, as we said at first, involves the interpretation and application of the Act to secure the effectiveness of judgments, of 1902, and wherein the parties have been fully heard.

Section 15 of said Act, invoked by petitioner, provides (Code of Civil Procedure, 1933 ed., p. 100):

"The payment or deposit by the defendant of the sums claimed from him, or a bond given to cover the claim, shall suspend the attachment ordered to secure said claim, or shall annul an attachment already in force."

The judge of the district court understood, giving the opinion of this Court in *Las Monjas Racing Corporation* v. *District Court*, 54 P.R.R. 386, a decisive scope which it does not have, and the intervenor insists in that said Section requires that in order to raise an attachment in all cases and therefore in the present one, that the payment, deposit or bond *be in the amounts claimed from defendant*, and that as here the amount claimed from defendant Pedrosa within the general claim of $65,000 was for $30,000, a bond for $5,000 was insufficient to raise the attachment.

In accordance with the letter of the law this conclusion appears clear. Applied to this concrete case it would operate as follows: to raise an attachment of goods for the value of $5,400 an amount of $30,000, or that is, an amount more than five times the value of the attached property, would have to be paid, deposited or bonded.

Such a conclusion is unjust, absurd. Nevertheless, we would be bound to accept it as the law if a further study of all the provisions of the act did not permit us to harmonize the order of the legislator in Section 15 of the act with what happens in this concrete case.

Section 2 of said act states:

"Section 2.—The effectiveness of the judgment shall be secured in the following manner:

"(a) If the obligation on which suit is brought be the delivery of a certain object or thing possessed by the defendant or by a third person in the name of such defendant, said defendant, or third person, as the case may be shall be prohib'ted from alienating or encumbering the object or thing until judgment has been rendered.

754

"(b) If the obligation be the payment of any sum of money, the provisional remedy shall consist of the attachment of sufficient property of the debtor to cover the amount claimed.

"(c) If the obligation cons'sts in the doing of a thing, an attachments shall be issued against the person who is under such obligat:on for a sum necessary to execute the work left undone or done otherwise than as provided in the agreement.

"(d) If the purpose of the action be to prevent the accomplishment of an act, the remedy shall consist in prohibiting the defendant from executing or continuing the execution of such act under warning of being punished for contempt of court, and in the attachment of a sum sufficient to indemnify against any act executed in contravention of the rights of the defendant.

"(g) In the foregoing cases, if damages are claimed, the remedy may include the attachment of the property of the defendant to an extent sufficient to cover such damages.

"(h) With respect to cases not provided for in the preceding rules, the court shall, in its discretion and in accordance with equity, adopt such measures as it may deem proper to secure the effectiveness of the judgment."

If we bear in mind the petition of the intervenor to secure the judgment, wherein it is said "that as the case involves the payment of a liquidated debt to the plaintiff", we must conclude that what is invoked by the intervenor and what is in effect in harmony with the nature of the action brought is letter (b) of the Section above copied.

This paragraph of the act speaks of "sums claimed", the same as Section 15 does. It is proper that this be so because it appears natural that the judgment be secured for the whole amount of the claim.

But in this concrete case, the $65,000 claimed were not asked to be secured, nor the $30,000 comprised therein, claimed against Pedrosa, which would have required a bond for a larger amount from plaintiff, but the security was expressly limited. by plaintiff to a lesser amount in relation to which it was that the court fixed and the plaintiff gave the bond.

In our opinion the petition was correct in that way because the lesser is included in the greater, but we think that as

the amount was limited it should serve as a basis and govern, for the application of all the other provisions of the act on this matter which is complete in itself. If to fix a bond which permitted an attachment according to letter (b) of Section 2, the lesser included in the greater was what was taken into consideration to lift the attachment, applying Section 15 the lesser included in the greater is what should be taken into consideration. The sums claimed, of which Section 2, paragraph (b), and Section 15 of the Act speak, should be understood as the sums whose security is prayed for by the plaintiff himself, who is the person who controls the case.

Interpreting the law in this manner, in order to apply it to the concurrent circumstances in the concrete case submitted for judicial determination, it becomes logical, equitable and just.

Finally, it is convenient that we refer to the provision of paragraph (h) of the said Section 2 of the Act, to wit: "(h) With respect to cases not provided for in the preceding rules, the court shall, in its discretion and in accordance with equity, adopt such measures as it may deem proper to secure the effectiveness of the judgment;" because it shows that the legislator, knowing that the subject matter was a complicated one and that various situations could arise in proceedings, recommended to the equity and discretion of the courts the adoption of any other measures which might be necessary to carry out the purposes of the law.

Although it is true that that Section refers to the manner of securing the judgments, we must not lose sight of the fact that the one who has the authority to decree and also to follow the execution of the decree—bond, deposit, substitution—not only may, but should adjust the measures taken later so that they may be in harmony. Therefore, if only a part of the sum claimed was secured at the instance of the plaintiff, the substitution of the attachment by the payment, deposit or bond should also be as to that part, and thus the

Act is interpreted in a manner that it operates justly for all parties to the suit.

For the foregoing reasons, the order of April 27, 1939, must be annulled, and the case returned to the district court for further proceedings not inconsistent with the principles set forth in this opinion.